# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PAUL E. LEWIS,                                  )
                                                )
        Plaintiff,                            )
                                                )          1:17CV217
        v.                                   )
                                                )
DURHAM WELLNESS AND FITNESS                     )
SPORTS CLUBS, INC., d/b/a/ MILLENUIM            )
SPORTS CLUB, and PATRICK CONTEH,                )
                                                )
        Defendants.                           )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendants Millennium Sports Club and its manager, Patrick Contech (hereinafter, "Defendants") motion for summary judgment.[1] (Docket Entry 61.) Plaintiff Paul Lewis (hereinafter, "Plaintiff") has responded to the motion. The matter is ripe for disposition. For the reasons stated herein, the Court recommends that Defendants' motion for summary judgment be granted.

## I.  FACTUAL BACKGROUND

In his Amended Complaint, Plaintiff asserts multiple causes of action against Defendants. First, Plaintiff alleges that Defendants violated his rights under 42 U.S.C. § 12101 ("Americans With Disabilities Act") by requiring Plaintiff to go to the back of a Zumba class at the facility when arriving late and subsequently terminating Plaintiff's gym membership when he failed to comply. (*See generally* Amended Complaint ¶¶ 35, 37, 39, 42, 46 and 49,

---

[1] All claims pending against Defendant Robert Nauseef were dismissed on October 10, 2017. (Docket Entry 43.)

Docket Entry 17.) In addition, Plaintiff asserts state tort causes of action against Defendant Conteh for defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages. (*Id.*)

Plaintiff asserts that he has been disabled since August 2011 due to degenerative disc disease, arthritis in his back, neck, knees and joints, as well as mental health issues. (Am. Compl. ¶ 12.) Plaintiff states that, due to his disabilities, he would arrive to group fitness classes late and situate himself in a spot in the front of the class. (*Id.* ¶¶ 24-25.) More specifically, Plaintiff asserts that his morning medication makes him "sick", which "makes it difficult" to arrive in time for the class to start. (*Id.* ¶¶ 42-43.) Moreover, Plaintiff asserts that he only could stand in the front because he has "50% hearing loss." (*Id.* ¶ 26.) Plaintiff further asserts that his rights under the ADA have been violated because he has not been allowed to attend public fundraisers and events held on the premises. (*Id.* ¶¶ 86-87.)

Defendants argue that Plaintiff's termination had nothing to do with his alleged disability. In order to avoid disrupting the class, Defendant Conteh would ask Plaintiff to go to the back of the class if he arrived late. (*See* Defs' Answer, ¶¶ 35, 37, Docket Entry 37; Conteh Aff. ¶ 12, Document Entry 62-13; *see also* Document 62 at 3.) In addition, Defendant Conteh noted that Plaintiff would disrupt class by "selling shimmy scarves." Furthermore, Plaintiff's actions made some of the female members "harassed and intimidated" due to Plaintiff's large stature, and Plaintiff would become "verbally combative" when asked about his actions. (Conteh Aff. ¶ 8-9.) After failing to follow Defendant Conteh's instructions and repeated warnings, Plaintiff's membership was terminated. (*See* Defs' Answer ¶ 49.) Furthermore, Defendants assert that Plaintiff never told Conteh he was allegedly disabled.

(Document Entry 62 at 3.) Moreover, in addition to Zumba, Defendants assert that Plaintiff participated in multiple classes, including cardio boot camp and weightlifting, as well as other physically strenuous activities at the facility. (*Id.*) Defendant Conteh denies ever telling Plaintiff that he could not attend public fundraisers or events held on the premises. (*Id.*)

Plaintiff further alleges that "Defendant [Conteh] made libelous statements that Plaintiff had been terminated from Millennium because he had 'harassed female members of the class' and 'used intimidation and language' at the gym . . . knowing such statements were false, in an effort to discredit Plaintiff." (Am. Compl. ¶¶ 92-93.)

Defendants believe the defamation claim stems from Plaintiff's complaint against Defendants to the Consumer Protection Division of the North Carolina Department of Justice. (*See* Docket Entry 62 at 4-5, referencing Docket Entry 1-4.) On behalf of Millennium and Conteh, Defendant Nauseef wrote a letter in response to the North Carolina DOJ's inquiry, stating, "[t]he manager of the facility has spoken to Plaintiff on at least nine (9) occasions about his harassment of female members in the Zumba class . . . [and] his interruption and disruption of many of the Zumba classes and his intimidation and language while on the premises." (*See* Docket Entry 1-5.) The letter also indicated that Plaintiff had never communicated that he had a disability, nor "would it have been a factor in the termination of his membership privileges." (*Id.*) Ultimately, the North Carolina DOJ took no action. (*See* Docket Entry 1-6.)

## II. PROCEDURAL BACKGROUND

On May 5, 2017, Plaintiff filed an Amended Complaint against Defendants asserting claims under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, N.C.G.S.

§ 168A–4 (North Carolina Persons with Disabilities Protection Act), and other state tort causes of action. (*See generally* Amended Complaint, Docket Entry 17.) On July 10, 2017, Defendants filed their answer to Plaintiff's Amended Complaint. (*See generally* Defs' Answer, Docket Entry 37.) On November 9, 2018, Defendants filed this motion for summary judgment. (Docket Entry 61.)

### III. STANDARD OF REVIEW

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from

the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

## IV. ANALYSIS

Defendants move for summary judgment with respect to all claims. As further stated below, Plaintiff failed to adequately respond to the motion. Defendants argue that summary judgment should be granted because: (1) Plaintiff has not produced any proof that he is disabled; (2) Plaintiff has not produced any evidence that he was discriminated against on the basis of his disability; and (3) the lack of connection between the federal and state law claims requires the dismissal of the state claim under 18 U.S.C. § 1367.

On December 10, 2018, Plaintiff filed a "response" that did not address any of the claims; rather, Plaintiff indicates in his brief that the parties did not have mediation and asks the Court to deny the summary judgment motion on the grounds that "it was prematurely filed due to the fact that the parties have not completed any meaningful mediation", and "there is evidence in the record that supports the existence of at least one genuine issue of material fact." (Document Entry 63 at 6.) Plaintiff also asks the court to schedule a mediation conference. (*Id.*)

On January 24, 2019, the Court issued a text order stating that it would not extend the mediation deadline, but *sua sponte* allowed Plaintiff to file a response to the motion for summary judgment.[2] Plaintiff filed another response on February 1, 2019, which is essentially

---

[2] According to the briefings, the parties scheduled mediation for September 11, 2019; one day before the mediation deadline, which had already been extended by the Court. (*See* August 8, 2018 Text Order extending mediation deadline from August 13, 2018 to September 12, 2018.) The mediation report indicates that mediation was not held due to "no agreement of the parties to move forward without all required parties of attendance." (Docket Entry 59.) Plaintiff asserts in his first response—

5

incomplete. Plaintiff makes a conclusory statement that Defendants did not "meet the burden" to show a genuine issue of material fact; and, without addressing any of the particular claims, argues that "Defendants have received far more than a scintilla of evidence that supports the allegations in Plaintiff's [Amended] Complaint." (Document Entry 66 at 2.)

The Court notes that Plaintiff failed to make any argument in his brief with respect to the ADA and state law claims. In the face of Defendants' arguments and supporting evidence in the brief in support of summary judgment, Plaintiff's failure to argue said claims is tantamount to abandonment of the claims. *See* Local Rule 7.3(k); *see also Kinetic Concepts, Inc. v. Convatec Inc.*, No. 1:08CV00918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession). Alternatively, Defendants' motion should be granted on the merits.

**A. ADA Claim**

"A person alleging discrimination under Title III must show (1) that he is disabled within the meaning of the ADA, (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation, (3) that the defendant took adverse action against the plaintiff that was based upon the plaintiff's disability, and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation." *Halpern v. Wake Forest Univ. Health Scis.*, No. 1:09CV00474, 2010 WL 3057597, at *21 (M.D.N.C. July 30, 2010), aff'd, 669

---

filed four months after the Court extended the mediation deadline—that he was unable to attend mediation due to a "lack of notice and extensive health issues", and Plaintiff's attorney could not attend because of a "scheduling conflict." (Docket Entry 63 at 2.)

F.3d 454 (4th Cir. 2012) (citing *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir.1999) (emphasis added)).

"One is within the ADA's protected class if one is 'a qualified individual with a disability.'" *Haulbrook v. Michelin North America*, 252 F.3d 696, 702 (4th Cir. 2001) (quoting 42 U.S.C. § 12112 (1995)). The question of whether a plaintiff is disabled under the ADA, "and therefore can bring a claim under the statute, is a question of law for the court, not a question of fact for the jury." *Rose v. Home Depot U.S.A., Inc.*, 186 F.Supp.2d 595 (D.Md. 2002) (citing *Hooven–Lewis v. Caldera*, 249 F.3d 259, 268 (4th Cir. 2001) (Rehabilitation Act case)).

The ADA defines "disability" as the following: "(A) physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Peeples v. Coastal Office Prod.*, Inc., 203 F. Supp. 2d 432, 458 (D. Md. 2002), aff'd, 64 F. App'x 860 (4th Cir. 2003) (citing 42 U.S.C. § 12102(2)).

First, Defendants argue that Plaintiff's allegations regarding only a physical impairment is not enough to establish a disability within the protected class. (Docket Entry 62 at 7.) Although Plaintiff claims that his disabilities "require him to take medication and engage in physical activities in a limited way" (Am. Compl. ¶¶ 12-13), Defendants argue that Plaintiff's participation in multiple classes, weightlifting and other physically strenuous activities at the gym would preclude a finding of disability. (Docket Entry 62 at 8.)

Drawing all reasonable inferences in Plaintiff's favor, the Court finds that the record doesn't support a finding of disability. As stated previously, Plaintiff asserts that his morning medication makes him "sick" prior to coming to class, which "makes it difficult" to arrive in

time for the class to start; furthermore, Plaintiff stands at the front because that was the "only spot available" if he arrived late. (Am. Compl. ¶¶ 42-43.) The scant evidence Plaintiff provides to the court include a list of medications prescribed form his physician, as well as a doctor's note indicating that Plaintiff had been diagnosed with chronic degenerative disk disease, chronic knee pain, and bipolar disorder. The letter also indicates that the doctor "judged [Plaintiff] to be disabled." (*See generally* Docket Entry 62-2.) Furthermore, the letter indicates that Plaintiff had undergone physical therapy "with minimal help" and has a "torn meniscus in the right knee." (*Id.*) Notably, the doctor who wrote the letter, Elizabeth Johnson, M.D., indicated that she was "seeing [Plaintiff] for the first time" that day; she determined he was disabled after "reviewing his case briefly." (*Id.*) Plaintiff also states that he stands in the front of the class because he has "50% hearing loss." (*See* Am. Compl. ¶ 26.) However, plaintiff doesn't provide any medical records that document his hearing loss.

In the absence of proof of how an individual is substantially limited in performing a major life activity by his or her alleged impairment, and to what degree, it is appropriate to dismiss the claim as a matter of law. *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352–53 (4th Cir. 2001). Although Plaintiff's medications may briefly limit his morning activities, Plaintiff fails to provide any proof that he is *substantially* limited in gym activities. Plaintiff has not shown that his alleged injuries have "prevent[ed] or severely restrict[ed]" him "from doing activities that are of central importance to most people's daily lives." *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 152 (4th Cir. 2012) (citing *Toyota v. Williams*, 534 U.S. 184, 198 (2002)). Furthermore, Plaintiff has also not shown any evidence that these injuries are "permanent or long term." *Id.* In fact, there is evidence to the contrary. Plaintiff states in his Amended Complaint that he

would go to the gym "twice a day" and he "always pushed himself each day to be active." (*See* Am. Compl. ¶ 23.) In addition, Defendant Contech states in his affidavit that Plaintiff participated in "multiple classes, weight lifting and physically strenuous activities" at the facility. (Conteh Aff. ¶ 6, Document 62-13.) The Court therefore concludes as a matter of law that Plaintiff is not a "qualified individual with a disability" under the ADA.

Next, Defendants argue that Plaintiff has not produced evidence that he was discriminated against on the basis of his disability. In his affidavit, Defendant Contech states that Plaintiff was disruptive because he would enter class late as well as attempt to sell "shimmy scarves" during class. (Document 62-13, ¶ 8-9.) Plaintiff's actions made some of the female members feel "harassed and intimidated" due to Plaintiff's large stature, and Plaintiff would become "verbally combative" when asked about his actions. (*Id.*) Plaintiff provides no argument in rebuttal, but states in the Amended Complaint that there were several conversations between him and Defendant Conteh concerning his tardiness and standing at the front of the class. When arriving late, Plaintiff was given the option of standing somewhere other than the front of the class, standing in the rear, or not taking the class at all. (*See* Am. Compl. ¶¶ 37-39.)

Assuming *arguendo* that Plaintiff had a known disability, Plaintiff has not provided any evidence from which a reasonable trier of fact could find that Defendant Conteh terminated his gym membership in violation of the ADA. In fact, evidence shows that Defendant Conteh reasonably accommodated Plaintiff—even after showing up to class late and disruptive—and ultimately terminated Plaintiff's membership based on his conduct. *See e.g, Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012) (citing *Martinson v. Kinney Shoe Corp.*,

104 F.3d 683, 686 n.3 (4th Cir. 1997) ("We have previously observed that "misconduct—even misconduct related to a disability—is not itself a disability" and may be a basis for dismissal.")); *see also Tyndall*, v. *Nat'l Educ. Centers, Inc. of California*, 31 F.3d at 214–15 (finding the dismissal of an employee for attendance problems did not constitute discrimination, even if her disability caused her absences); *Little v. FBI*, 1 F.3d 255, 259 (4th Cir.1993) (holding that employee could be terminated for intoxication, although it was related to alcoholism, a disability). Drawing all reasonable inferences in Plaintiff's favor, no genuine issue exists as to whether Defendant Conteh terminated Plaintiff's membership due to his alleged disability. Accordingly, Defendants are entitled to summary judgment with respect to Plaintiff's ADA claim.

**B. Plaintiff's Remaining State Law Claims Are Subject to Dismissal.**

Lastly, Defendants argue that Plaintiff's ADA claim has no bearing on his remaining state law claims. In several instances, when the only remaining claims in civil rights and employment discrimination actions are ancillary state law claims, the Middle District of North Carolina, at its discretion, has remanded these claims to state court without probing their merits. *See e.g.*, *Clemmons v. Guilford Tech. Cmty. Coll.*, No. 1:16CV482, 2017 WL 3128104, at *9 (M.D.N.C. July 21, 2017) (unpublished) ("Because this court will dismiss Clemmons's federal claim, therefore, it will decline to exercise supplemental jurisdiction over her State-law claims, which will be remanded to State court."); *Long v. Forsyth Cty. Dep't of Soc. Servs.*, No. 1:15CV683, 2016 WL 7496122, at *8 (M.D.N.C. Dec. 30, 2016) (unpublished) ("The court finds that judicial economy, convenience, fairness, and comity weigh in favor of remanding the remaining claims—all founded solely on State law grounds—to State court for further consideration."); *York v. City of Turlington*, 225 F. Supp. 3d 341, 351 (M.D.N.C. 2016) ("Because

this court will dismiss all of Plaintiffs' federal claims and there is no other identified basis of subject matter jurisdiction, the court declines to exercise supplemental jurisdiction over their State law claims."). As such, here, the Court should decline to analyze whether Plaintiff's state tort law claims are within the purview of Plaintiff's ADA claim and should leave it to the state court to determine whether Plaintiff has any cognizable claims under North Carolina law. *Miller v. AmCare Grp.*, LLC, No. 1:17CV90, 2017 WL 5028100, at *3 (M.D.N.C. Oct. 30, 2017).

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Defendants' motion for summary judgment (Docket Entry 61) be **GRANTED**.

_____
Joe L. Webster
United States Magistrate Judge

February 20, 2019
Durham, North Carolina